JESSE HARRIS AND KINNEY WILBOURN *v.* THE STATE.

1. HOMICIDE. *Self-defense. Evidence. Instructions.*

   Although the evidence for the state may show a case of murder, if there is testimony to the effect that deceased was killed while trying to draw a pistol, when an effort was made by accused to arrest him, the court will not weigh the evidence, but should submit to the jury instructions on the right of self-defense, and admit evidence of threats made by deceased to kill anyone attempting to arrest him, leaving the jury, on the whole case, to accept or reject defendant's theory.

2. ARREST. *Private person. Justice warrant.*

   Where a private person deputized by a justice of the peace to execute a warrant of arrest issued by him, acts under the warrant in making the arrest, he is entitled to the protection afforded a *de facto* officer in serving a warrant.

FROM the circuit court of Tunica county.

HON. R. W. WILLIAMSON, Judge.

Appellants, Jesse Harris and Kinney Wilbourn, were indicted for the murder of Henry Mitchell, and were convicted of manslaughter. A motion for a new trial was overruled, and defendants appealed.

The defendant, Wilbourn, had made an affidavit charging deceased with maliciously shooting a mule. Upon this affidavit a warrant had been issued for the deceased, by a justice of the peace, who placed the same in the hands of defendant, Harris, specially deputizing him to execute it. Harris took Wilbourn to point out Mitchell, both the parties being armed with Winchester rifles, and Harris having a pistol. The deceased received one shot, from the effects of which he died, the ball entering the back, on the right of the spinal column, and ranging upward and inward.

There was testimony for the state that Wilbourn had made threats against the life of deceased. The attending physicians testified that the wound was necessarily made by a person standing behind or at the side of the deceased. The testimony for defendants tended to show that they saw deceased coming towards them in a field, when they concealed themselves; that deceased came near, when Harris showed him the warrant and attempted his arrest; that he began to back, and put his hand behind him as if to draw a pistol; and that Harris saw the handle of a pistol in his hand, and, not wishing to shoot with the rifle, threw it down, when deceased started towards it, and Harris shot him with his pistol, only one shot being fired. The opinion contains a further statement of the case.

*F. A. Montgomery, Jr.*, and *J. B. Cochran*, for appellants.

This case was tried by the court below upon the theory that Harris was not authorized to make the arrest under the warrant. If he had the right to execute the warrant, the judgment must be reversed. Section 2403, code 1892, expressly provides that a justice of the peace may appoint a reputable person to execute any process. The language is plain, and there is nothing to indicate that it does not include criminal warrants.

If one, in resisting arrest, makes an assault upon the officer, whereby it reasonably appears he is in imminent danger of death or great bodily harm, he may slay in self-defense. Roscoe on Cr. Ev., 615; 61 Am. Dec., 162.

The court should have admitted the testimony going to show threats by the deceased, which were communicated to the appellants. It is always competent to prove everything that will tend to show the motive of the killing. *Story* v. *State*, 68 Miss., 609.

It was error to refuse defendants' instructions as to self-defense. The court could not decide upon the weight of this evidence, and exclude it because deemed insufficient. The tes-

timony shows that the defendant, Harris, had good reason to believe that he was in imminent danger of death or great bodily harm. *Hawthorne* v. *State*, 58 Miss., 778; *Thomas* v. *State*, 61 *Ib.*, 60. Whether or not a magistrate can, under any circumstances, specially deputize one to execute a criminal warrant, it must be true that a person so deputized is an officer *de facto*, and he is entitled to protection as such. *Ray* v. *Murdock*, 36 Miss., 692; 90 Am. Dec., 488.

*Frank Johnston*, attorney-general, for the state.

Proof of threats is never admissible unless there has been some overt act. *Kendrick* v. *State*, 55 Miss., 436; *Moriarty* v. *State*, 62 *Ib.*, 654. Under the facts of this case, no reasonable man could have supposed that the action of the deceased constituted a hostile demonstration. He did not draw a weapon, and it is evident he had no intention of using one. On this point, see *Evans* v. *State*, 44 Miss., 762; *Parker* v. *State*, 55 *Ib.*, 414.

There was no error in giving the instructions for the state. They contain abstract principles of law, and are correct. Some of these instructions are on the theory of murder; but, as the verdict was for manslaughter, error cannot be predicated. *Parker* v. *State*, 55 Miss., 414. The verdict of manslaughter is supported by all the facts, and it is manifest that the defendant was not prejudiced by the action of the court in refusing any of the instructions asked. Even if Harris was legally authorized to make the arrest, as counsel contend, he was clearly guilty of manslaughter. Where resistance is made, if the officer kill the party after resistance is over, the crime is, at least, manslaughter. Wharton on Homicide, p. 49; 9 Am. & Eng. Enc. L., 608.

WHITFIELD, J., delivered the opinion of the court.

Dr. Irby testifies that the deceased "could have been shot from the side, the way the bullet went in." Harris testified

that the pistol of deceased "was in his right-hand hip pocket, and deceased was facing witness kinder sideways;" and, again, that deceased was close enough to the Winchester; all he had to do was to reach over and get it. It is shown that the range of the ball was inward and upward. Both defendants say that Harris threw down his Winchester, and that deceased, who they say had put his hand on what appeared to be a pistol in his hip pocket, and who, Harris says, appeared to be "fingering his pistol," which, he says, "appeared to hang back," sprang towards the Winchester to get it, and they both say Harris then shot deceased with his pistol. The appellants offered to show threats communicated to them the night before, to the effect that the deceased said he would not be arrested; that he would "kill any two men who came to arrest," etc. This was excluded, and a number of instructions presenting the theory of self-defense were refused.

The testimony for the state might well have warranted the jury in finding a verdict of murder, if that had be enaccepted and the testimony as to threats admitted, and instructions giving the appellants the benefit of a submission of their theory of self-defense to the jury had been given. But the court refused the instructions presenting this theory, and shut out all evidence as to threats. We cannot weigh the testimony offered in the light of the charges refused, or the testimony detailed above in the light of these charges, supposing them to have been given. It was for the jury to say, with this testimony in, and these instructions given, what credit they would give defendants' witnesses and theory. Unless we are clearly satisfied that in no reasonably possible view was there any testimony supporting defendants' theory offered or admitted in evidence, we cannot say the instructions were properly refused, or the threats properly excluded. After careful consideration, we are not thus clearly satisfied, looking especially to the testimony of Dr. Irby. The wound itself speaks most convincingly, and goes a long way towards justifying the action of the learned judge

below in determining, as he must have done, that the testimony showed a case so clearly and manifestly one of murder as not to make it a proper one for the admission of the testimony as to threats, or the granting of instructions on the theory of self-defense. But the testimony of Dr. Irby, coupled with that of the defendants, and the range of the ball "upward," which might as well indicate a stooped position in the effort to pick up the Winchester as in flight, it seems to us so far meet the fact of the shot in the back as to have made it safer to admit the testimony and grant the charges, leaving the jury, on the whole case, to accept or reject the defendants' theory.

Section 2403, code 1892, appears as § 2199, code 1880; § 1311, code 1871; art. 11, p. 406, code 1857, and was first enacted as § 21 of the act of June 28, 1822 (Laws, p. 8). Originally, it manifestly related to all process, civil and criminal, as an examination of that act will clearly show. In codes of 1857, 1871, and 1880 it appears in the separate chapter on civil practice, and the language of § 2403—"party to the cause, etc."—seems to contemplate only civil cases, especially taken in connection with § 1372, code 1892, last clause, which provides that "private persons may also make arrests," this last relating only to criminal cases, and being declaratory of the common law. 1 Bish. on Cr. Proc., § 188. Whether § 2403 relates only to civil cases or not, however, under the facts of this case, the appellant, having acted under the warrant, should have been treated as clothed with the protection thrown around officers *de facto* making arrests.

This, too, leaving out of view § 1372, code 1892, under which we are inclined to hold the warrant legally issued, not because of "any emergency" having arisen, within the meaning of § 2403, code 1892, which seems to relate now only to process in civil cases in which there is good reason for waiting till the regular officers can serve process, unless an "emergency" arises, since, usually, no harm can come by waiting, but from the express power given by § 1372, code 1892. The

power to issue a warrant to a private person to make an arrest, necessarily includes the power to deputize a private person to execute such warrant. And, in criminal cases, it is to be remembered that there is imperative need, often, that the arrest shall be made at once, by a private person under warrant, not stopping to see whether an "emergency," required to make proper the deputization of a private person in civil cases, has arisen, else the offender might escape. These views sufficiently indicate the lines along which the case should proceed on the new trial in the court below. The judgment is

*Reversed, and the cause remanded.*