# THE STATE v. JAMES C. PRITCHETT, Appellant.

### Division Two, May 18, 1909.

1. **NO PRELIMINARY EXAMINATION: Point Not Made During Trial: Waiver.** It is not necessary that the information, charging murder, also charge that defendant had previously been accorded a preliminary trial, nor can the point that he was not given a preliminary hearing be raised in the motion in arrest. The point at most relates to an irregularity, and if not made before or during the trial will be considered waived.

2. **MOTION FOR NEW TRIAL: Not Filed Until After Judgment: Waiver.** The motion for a new trial is required by the statute (Sec. 2689, R. S. 1899) to be filed before judgment; and where defendant has failed to so file his motion, and is informed by the court of his conviction and asked if he has any legal cause to show why judgment should not be pronounced upon him and fails to show such cause, and fails to except to the action of the court in sentencing him, he will be held to have waived his right to file a motion for a new trial; and his motion filed after judgment cannot be considered on appeal.

3. ————: **No Motion: No Evidence Considered.** Where there was no motion for a new trial, the appellate court cannot consider objections to the admission or rejection of evidence.

4. **ARRESTS: Deserter: Act of Congress: Constable: Warrant.** A constable is authorized by the laws of this State to arrest persons charged with crime in his county, when armed with a warrant for that purpose, and without a warrant when the offense is committed in his presence; and under the Act of Congress he has authority "to summarily arrest a deserter from the military service of the United States," without a warrant, in any county in this State, and in doing so he does not act as constable, but as the agent of the United States, so constituted

by said act. As constable he could not arrest the deserter out-
side of his county without a warrant, but as such agent he
could.

Appeal from Camden Circuit Court.—*Hon. Argus Cox,*
Judge.

AFFIRMED.

*Nixon, Moore, Roach & Carter* for appellant.

(1) Defendant claims that material error was
committed in not giving him a preliminary examina-
tion as provided in Laws 1905, page 133. The Legisla-
ture deemed a preliminary examination of such par-
amount importance in capital cases that it singled out
this class of criminal cases and expressly provides that
no defendant shall be prosecuted by information unless
he was first given a preliminary examination. It is
written into the criminal law and it is certainly manda-
tory on the courts. It is a provision for the protection
of the liberty of citizens and should receive a liberal
interpretation by the courts. Defendant denies that
this right was granted to him and claims that material
error was committed by such denial. The evidence
shows beyond question that defendant had no prelim-
inary examination, and this prosecution by informa-
tion was without authority of law. Criminal courts
have no common-law jurisdiction in criminal cases.
Their jurisdiction is conferred by statute. Adams v.
Cowles, 95 Mo. 501; Hagardine v. Van Horn, 72 Mo.
370. The question of jurisdiction is one to be tried on
the whole record, and where it appears that the court
had no jurisdiction, the judgment will be treated as
null and void. Adams v. Cowles, supra. (2) Neither
under the Missouri statutes nor at common law has an
officer exercising police powers the right of arrest for a
misdemeanor without a warrant unless the offence is
committed in his presence. W. J. Manes was the mar-

shal of Richland, a city of the fourth class. He was chief of police of that city. The statute has expressly limited his authority. He had the right to make an arrest at all times with proper process. He had the right to make arrest without process as to all offenses committed in his presence. This was the limit of his authority. Sec. 5922, R. S. 1899. This clothed him with no power to make this arrest. Manes, as constable, had no more authority to make arrests than as a marshal. His power to make arrests was limited in the same way and to the same extent. He must have a warrant or the misdemeanor must be committed in his presence. Sec. 855, R. S. 1899. Because defendant escaped custody of Manes did not give him authority to pursue and arrest him without warrant either in Camden county or elsewhere. Sec. 2542, R. S. 1899, provides that when a defendant has been legally arrested in the first instance and escapes custody he may be immediately pursued and rearrested. This statute could not be applied to a case where the first arrest was illegal. It would be an absurdity to say that one illegal arrest would justify another. Prior to Acts of Congress approved June 18, 1898, no civil officer of any State had authority to arrest a deserter from the United States army. Kurtz v. Moffitt, 115 U. S. 458. The act of desertion was a misdemeanor under the United States laws. Section 6 of an Act of Congress approved June 18, 1898, provides: ''That only civil officers having the authority under the laws of any State to arrest offenders are authorized to summarily arrest a deserter from the military service of the United States.'' As a constable or city marshal of a city of the fourth class Manes had no authority to legally arrest an offender without a warrant except as to offences committed in their presence. The Act of Congress gave the officer, in this case, no authority to arrest defendant.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1)   Defendant avers that a reversal of this cause is necessitated by the fact (as he alleges) that he was not accorded a preliminary hearing.   This assignment must be overruled for two reasons: 1.   The record shows affirmatively that defendant formally waived a preliminary.   The officer who conveyed defendant to the jail at Lebanon is the one named in the justice's record as delegated to make the arrest.   The record of the justice was met by defendant's affidavit, only.   The trial court must be presumed to have resolved the issue of fact against defendant, and that action of the court is not reviewable under the circumstances disclosed by this record.   2.   Defendant did not make any point on the want of a preliminary hearing until by his motion in arrest.   He now insists that because of the alleged want of a preliminary the trial court had no jurisdiction to try the case.   This contention is fully answered by decisions of this court.   State v. McKee, 212 Mo. 147; State v. Jeffries, 210 Mo. 319; Ex parte McLaughlin, 210 Mo. 663.   Defendant should have presented this question, if the facts justified it, by motion to quash, and made his proof thereon.   (2) The supplemental record shows that defendant did not file his motions for new trial and in arrest of judgment until after judgment.   The motions were out of time, and there is nothing here for review except the record proper.   Sec. 2689, R. S. 1899; State v. Rosenblatt, 185 Mo. 119; State v. Brown, 206 Mo. 507.

BURGESS, J.—At the August term, 1907, of the Camden Circuit Court, the defendant was convicted of murder in the second degree, under an information filed by the prosecuting attorney of said county charging him with the crime of murder, for having shot and killed with a loaded pistol one William J. Manes, in

said county, on the 27th day of July, 1906. Defendant filed motions for a new trial and in arrest of judgment, which were overruled, whereupon he appealed.

The evidence shows that the defendant lived near Richland, Pulaski county, Missouri, and that about a month prior to the commission of the alleged offense he enlisted in the United States army, but deserted therefrom some ten days later. Deceased was constable of Liberty township, and city marshal of Richland, in Pulaski county, and having learned of Pritchett's desertion through a notice issued by the commanding officer at Jefferson Barracks, Missouri, he sought out the defendant and placed him under arrest, but the latter in some way not disclosed by the testimony, managed to make his escape. Three days later, July 27, 1906, the deceased discovered the defendant working with other men in what was called "the Baker field," in Camden county, some three or four miles from Richland, and rearrested him. With the defendant in his custody, the deceased started towards Richland, and it is not shown that the defendant offered any resistance until a point was reached just inside the Camden county line, about a quarter of a mile from Richland, when the defendant suddenly knocked the deceased down and jumped upon him. The struggle was observed by a girl, Cora Newberry, who was passing by, on her way home from Richland. She testified that the deceased appealed to her for assistance, stating that Pritchett was going to kill him, and she replied that she was afraid, whereupon the deceased said, "Get somebody to come, then; this boy is going to kill me." She saw that the defendant was endeavoring to secure the officer's revolver, which the latter fought to prevent, meanwhile pleading with the defendant not to kill him. The defendant knocked the officer down and fell on top of him, and the struggle for possession of the revolver continued. Finally the defendant wrenched the weapon from the grasp of the officer, and the fatal shot was

fired. The ball, according to the evidence, passed entirely through the officer's head, the wound proving instantly fatal. Cora Newberry did not see the revolver at the time the shot was fired, as the defendant's back was towards her at the time, but immediately after the shooting the defendant rose up, with the revolver in his hand. Seeing the girl, he went up to her and said, "You go home, if you don't I will kill you. Don't you start back to town—you go home as quick as you can." He then left her and ran through the woods, leaving his hat behind him.

The testimony on the part of the defendant showed that when the deceased accosted him in the Baker field, on July 27th, he said to the defendant, "You are my man," and that the defendant responded, "All right;" that the deceased then handcuffed the defendant's right hand to his own left, and remarked, "If you get away from me this time, you will get away with a dead dog tied to you." No warrant for the defendant's arrest was read or exhibited by the deceased at the time; nor did the defendant object to the action of the deceased or ask by what authority he made the arrest. Soon after the shooting the defendant was seen by some of his acquaintances. His clothing was torn, his face bruised, and his mouth bleeding, and the handcuff was still on his wrist.

Testifying in his own behalf, the defendant told of his apprehension by the deceased, and of the fact that they were handcuffed together and started for Richland in that fashion. He testified that while on the way deceased made numerous threats as to what he would do if defendant attempted to escape. The day was warm, and the deceased and defendant, at the latter's request, stopped to rest several times. Finally the deceased refused to permit any further stop, and presenting his pistol, threatened to kill the defendant if he stopped again. Defendant caught hold of the pistol, which he said was pointed at his breast, and immedi-

ately a struggle ensued for the possession of the weapon, during which deceased stumbled and fell, dragging the defendant down with him. The pistol dropped to the ground, and the deceased recovered it and struck the defendant therewith in the face. Defendant again got hold of the weapon, and during the struggle for its possession it was accidentally discharged, the ball striking the deceased. While the struggle was in progress the handcuffs came apart, which enabled him to get away. Defendant denied the truth of Miss Newberry's testimony. He also denied that he deserted the army, and explained that he was allowed a furlough for ten days by an officer at Jefferson Barracks, but that he staid at home a few days longer than permitted. He was, however, unable to produce said furlough, which he said was in writing.

Mrs. Etta Bakewell, a witness for the defendant, testified that she saw the struggle between the defendant and deceased. She was on her way home from Richland, and left the main road, taking an old road near by which was sometimes traveled. She witnessed the struggle while standing under a post oak tree, some fifty paces distant from the combatants. The defendant, she said, shoved deceased towards the fence by the roadside; that the deceased fell, with the defendant on top of him; that she saw the deceased point his revolver at the defendant, and that as the defendant grabbed the weapon and pushed it back it went off. This witness said she saw Miss Newberry some distance away from the men, but did not hear her say anything. Mrs. Bakewell went home, but did not tell her husband or children anything about the shooting, although her little son spoke about the killing that same night. Her reason for not speaking about it, as she testified, was that she was afraid and "didn't want to get mixed up" in the affair. She didn't testify at the coroner's inquest and the persons to whom she first communicated

her knowledge of the killing were Mr. and Mrs. Bent Clark, and this was about a month after it occurred.

In rebuttal, the State introduced witnesses who testified that the spot at which the killing occurred could not, by reason of intervening brush, be seen from the point where Mrs. Bakewell stated she witnessed the shooting. However, other witnesses for the defense testified to the contrary.

Defendant complains that he was not allowed a preliminary examination, as provided by section 2467a, Laws 1905, p. 133, which reads as follows: "No prosecuting or circuit attorney in this State shall file any information charging any person or persons with any capital offense until such person or persons shall have been accorded the right to a preliminary examination before some justice of the peace in the county where the offense is alleged to have been committed, in accordance with article 3 of chapter 16 of Revised Statutes of Missouri of 1899."

In State v. Jeffries, 210 Mo. 302, it is said: "The grand jury may indict or under our present Constitution the prosecuting attorney may file his information, and even where a preliminary examination is required, it has been held that it was unnecessary for the information to allege that the accused had had a preliminary examination or had waived it. This is not a matter which goes to the merits of the trial, but the regularity of the previous proceedings. [Washburn v. People, 10 Mich. 383; State v. Barnett, 3 Kan. 250.]" See, also, Ex parte McLaughlin, 210 Mo. 657; State v. McKee, 212 Mo. 138.

Although the justice might. after a preliminary examination, discharge the prisoner, such action would in no way operate as a bar to an indictment, or to an information by the prosecuting attorney for the same offense, and whatever the justice might do in the case is from a legal standpoint merely preliminary. The matter complained of was at most an irregularity. Be-

sides, the point was not made before or during the trial, and it must, therefore, be regarded as having been waived. In no event could the question have been raised by motion in arrest, which is no part of the record proper.

It is said for defendant that the court admitted improper evidence for the State. But the action of the court in this regard being matter of exception, the point made should have been embodied in the motion for new trial, and preserved and brought before this court for review in the bill of exceptions. The record, however, shows that the defendant did not file his motion for new trial or in arrest of judgment until after judgment. Section 2689, Revised Statutes, 1899, provides that "the motion for a new trial shall be in writing, and must set forth the grounds or causes therefor, and be filed before judgment, and within four days after the return of the verdict or finding of the court, and shall be heard and determined in the same manner as motions for new trials in civil cases."

On the 24th day of August, 1907, the jury found the defendant guilty of murder in the second degree, and fixed his punishment at ten years' imprisonment in the penitentiary. Whereupon the defendant was informed by the court that he had been convicted of murder in the second degree, and his punishment assessed at ten years in the penitentiary, and the court asked him if he had any legal cause to show why judgment should not be pronounced against him according to law, and the defendant failing to show such cause, judgment and sentence was passed upon him in accordance with the verdict of the jury. Thereafter, and upon the same day, the defendant filed his motion to set aside the verdict and for a new trial, which was overruled by the court, and exception duly saved. The question, therefore, is, whether the defendant, by failing to show cause why judgment should not be passed upon him and failing to except to the action of the

court in sentencing him, thereby waived his right to file his motion for a new trial within four days after the verdict. We hold that he did. The right to file a motion for a new trial is a privilege conferred by statute, and like any other privilege so conferred, may be waived by the defendant in a criminal case as well as by a party to a civil suit. A similar question was before this court in the case of State v. Rosenblatt, 185 Mo. 114. In that case the question was as to the effect to be given a motion in arrest filed after final judgment. While a motion for new trial goes to matters of error and exception occurring during the pendency of the suit, the motion in arrest goes to errors appearing upon the face of the record proper; but the rule announced in the Rosenblatt case applies as to either motion filed after judgment. The court in that case said:

"Both at common law and by our statute a motion in arrest must be filed before sentence. Thus Chitty, in his Criminal Law (5 Ed.), vol. 1, page 663, says: 'The defendant may move at any time in arrest of judgment, *before the sentence* is actually pronounced upon him;' and again, 'But if the sentence is once pronounced, though before the actual entry of the judgment, the court are not bound to *attend at all* to a motion of this nature, even though a formal error should be discovered, sufficient to reverse the proceedings, but the defendant is left to his writ of error; though, as we have seen, the court may, without any motion, arrest the judgment, and may alter the sentence any time during the same term.' Bishop, in his work on Criminal Procedure (1 Ed.), section 852, adopts Chitty's statement of the practice on this subject.

"The practice in this State in criminal cases as to motions for new trial and in arrest of judgment is different from the practice in civil cases. In the latter we have not followed the common law practice of waiting for four days after the rendition of the verdict be-

219 Sup.—45

fore having the judgment signed and entered, but it is the approved practice in civil cases for the clerk to enter the verdict on the record, and the judgment upon it, and the right to file a motion for new trial or in arrest within the four days allowed by the statute is not affected by the entry of the judgment before the filing of the motion for new trial or in arrest, whereas in criminal cases it is specifically provided by section 2689, Revised Statutes 1899, that such motion shall be filed '*before judgment*,' and the same is true of motions in arrest. [Sec. 2690, R. S. 1899.] And such is the accepted practice in this State.''

Defendant's motion in arrest of judgment was also filed after judgment, and, for the reason stated in the Rosenblatt case, was too late to be available.

Objections to the information could be raised for the first time in this court, but this was not done by the insistence of defendant in his brief that Manes had no authority to arrest the defendant. The defendant was a deserter from the military service of the United States, and the deceased was constable of Liberty township, and city marshal of Richland, in Pulaski county, Missouri. As constable, he was authorized by the law of this State to arrest persons charged with crime in Pulaski county in this State, when armed with a warrant for that purpose and without warrant when the offense is committed in his presence.

Sec. 6 of the Act of Congress (30 U. S. Stat. at Large, p. 484) of June 18, 1898, provides: ''That it shall be lawful for any civil officer having authority under the laws of the United States, or of any State, Territory, or District, to arrest offenders, to summarily arrest a deserter from the military service of the United States and to deliver him into the custody of the military authority of the General Government.''

It appears from the record that the following notice had been sent out by the government, and had come into the hands of the deceased:

"To all whom it may concern:

"Under Section 6 of an act of Congress, approved June 18, 1898, any civil officer having authority under the laws of the United States, or of any State, Territory or District, to arrest offenders, is authorized to summarily arrest a deserter from the military service of the United States and to deliver him into the custody of the military authority of the General Government.

"The following described enlisted men of the United States army having deserted from this station, on dates set opposite their names, persons authorized by the act of Congress, hereinbefore cited, are requested to arrest them and arrange with the nearest military authorities as to the place where they shall be delivered up, whereupon a reward of $50 will be paid for each, and will be in full satisfaction of all expenses for arresting, keeping and delivering the deserter.

"Name—James C. Pritchett." Then follow the dates of said Pritchett's enlistment and desertion, his place of residence, etc.

It is clear from the act of Congress that the deceased had authority to summarily arrest the defendant, he being a deserter from the military service of the United States, and deliver him into the custody of the military authority of the Government. In making this arrest, the deceased was not acting as constable but as agent of the United States, and having power under the laws of this State to arrest offenders, he came within that class of persons referred to in the act of Congress as being authorized to arrest a deserter from the United States army, and he had authority, under said act, to make the arrest in any part of the State in which the defendant might be found. [State ex rel. v. Nast, 209 Mo. l. c. 728, 729; Bishop's New Crim. Proc. (4 Ed.), p. 237.] It is true that under the law of this State the constable had no authority to make the arrest without a warrant therefor, but by the

act of Congress, under which he acted, he was authorized to arrest the defendant without a warrant. His official capacity was known to the defendant; they lived in the same neighborhood and were well acquainted with each other, and the record does not show that the defendant questioned the authority of the constable to arrest him. The deceased first arrested the defendant in Pulaski county, but he escaped from his custody, and when deceased subsequently rearrested him in Camden county, defendant shot and killed him.

An examination of the record satisfies us that it is free from substantial error.

The judgment is affirmed. All concur.