## BOATWRIGHT *v.* STATE.

[83 South.  311, In Banc.  No. 20878.]

1. HOMICIDE.  *Evidence of threats admissible.*

In a prosecution for the murder of a constable, evidence that the defendant, a deserter from the army made threats several weeks before the homicide that he would kill any officer who attempted to arrest him, were admissible.

2. TIMELY SERVICE OF COPY OF INDICTMENT AND SPECIAL VENIRE.

Under Code 1906, section 1606 (Hemingway's Code, section 1373), where a defendant accused of murder was served with a copy of the indictment and special venire on Saturday afternoon at four o'clock and the venire was returnable and the case was called for trial on the following Monday morning at nine o'clock. This was a compliance with Code 1906, section 1481 (Hemingway's Code, section 1239), requiring the service to be one entire day before the trial.

3. ARREST.  *Homicide. Right to arrest army deserters without warrant.*

Under Act of Congress, June 18, 1898, section 6 (U. S. Compt. St., section 2297), a constable had the right to arrest a deserter from the army without warrant and in such case defendant's act in killing such constable was not in resistance of an illegal arrest.

APPEAL from the circuit court of Lauderdale county.
HON. R. W. HEIDELBERG, Judge.

Beeman Boatwright was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*C. B. Cameron,* for appellant.

The copy of venire summoned and copy of indictment were served on appellant on Saturday afternoon at 4 o'clock and appellant put to trial over his objection on the following Monday.

The statute in question is section 1481 of the Code of 1906, and is as follows: (1481) "Proceedings after indictment: in capital cases, copy of indictment and special venire served to be given; any person indicted for a capital crime shall, if demanded by him, by motion in writing, before the completion of the drawing of the special venire have a copy of the indictment and a list of the special venire summoned for his trial, delivered to him or his counsel at least one entire day before said. trial," etc.

Appellant contends that the "one entire day" mentioned in the statute means a judicial day—a day set for work and that it was never intended by the legislature to mean that Sunday should be considered the "one entire day."

In construing the statute let's look to the intention and purpose of same. This court speaking in the case of *Friar* v. *State*, 3 How. 422. as to the purpose of a similar statute, said: "This is certainly a right to which he is strictly entitled by the statute of this state, to enable him to prepare his defense and to make his challenge to the jurors."

The supreme court of Alabama in case of *Haisten* v. *State*, 59 So. 363, says as to purpose of like statute: "This plain object and purpose of the statute in requiring a service on the defendant of these copies is to afford him suitable and reasonable time in which to prepare his defense and get ready for trial. The service was not made on the defendant until the second day after the jury was drawn and the order entered, and then at a time when the defendant was almost immediately thereafter put upon his trial without a fair and suitable opportunity to consider the jury lists and prepare his defense after the service of copies. This was not a compliance with either. The letter or spirit of the mandatory statute which the lawmakers have in their wisdom seen fit to enact for the benefit and pro-

tection of those charged with the commission of the highest crime known to our law and which one charged with such a crime has a right to rely upon the strict and fair compliance within the preparation of his defense when brought to the bar of justice."

Again in the same case the court quoted: "The provisions of the statutes requiring the service of a copy of the indictment and jury list in capital felonies are mandatory and a failure to comply with such statutes strickly is fatal error, for the defendant is entitled as a matter of right to the protection afforded by them." "Citing following cases from Alabama courts: *Welch* v. *State*, 1 Ala. App. 144, 56 S. W. 11; *State* v. *McLendon*, 1 Stewart 195; *Parsons* v. *State*, 22 Ala. 50; *Morgan* v. *State*, 48 Ala. 65; *Bain* v. *State*, 70 Ala. 4; *Brown* v. *State*, 128 Ala. 12, 29 So. 200; *Jackson* v. *State*, 50 So. 118.

The case of *Roberson* v. *State*, 50 So. 345, from Alabama supreme court recognized the exclusion of Sunday in the computation of "one entire day" under the Alabama statute. The case of *Nixon* v. *State* reported in 2 Smedes and Marshall on page 497, is authority for the contention made by appellant to the effect that the words "one entire day" before trial mean one entire judicial day. The case of *Dorrah* v. *State*, reported in 44 Miss. at page 789, is authority for proposition that if list of jury not served on defendant at proper time, that is good reason to postpone case until the accused had time allowed by law to examine and purge the panels is stated.

I have been unable to find any authority directly in point on this question, that is to say that passes on the direct question as to whether Sunday is to be reckoned or excluded, except the *Alabama Case, supra.*

I submit that Sunday should not be reckoned in the computation of time even if you apply the computation statute for the reason that Sunday as given was the

last day and not an intervening day and hence under the statute Sunday being the last day, it should be excluded and under authority of Nixon case the fractional part of Saturday cannot be computed, so he was entitled to the entire day of Monday before he was called upon to enter his trial.

This court held that the word "day" as used in the constitution section 72 thereof means a whole day of twenty-four hours from twelve midnight of one night to twelve midnight of following night. *Carter* v. *Henry,* 87 Miss. 411, 39 So. 690; *State* v. *Michel,* 52 La. Am., 27 So. 565, citing 26 Am. & Eng. Ency. Law, page 10; *Haley* v. *Young,* 134 Mass. 266, Anonymous, 2 Hill, 375; *Thayer* v. *Felt,* 4 Polk. 354; *Hammin* v. *Tourtellott,* 10 Allen 494; *Cunningham* v. *Mahan,* 112 Mass. 59; *Burrage* v. *State;* 101 Miss. 598.

The court permitted state to give in evidence declarations of witness Beall alleged to have been made five weeks before appellant got him a gun like the one he had and that if he had one like it no officers could arrest them.

The entire testimony of this witness was incompetent under the authorities. See case of *State* v. *Laque* from supreme court of Louisiana reported in 6 So. 787. *People* v. *Bazy,* 67 Cal. 223, 7 Pac. 643; *State* v. *Weaver,* 57 Iowa, 730, 11 Pac. 675; *State* v. *Barefiled,* 29 N. C. 299; *Abernathy* v. *Comm.,* 101 Pac. 332; *Ogletree* v. *State,* 28 Ala., 693; *Ford* v. *State,* 71 Ala. 385; *Carr* v. *State,* 23 Neb. 749.

If the conversation of the appellant with witness Beall was introduced for the purpose of showing threats by appellant then it was inadmissible. No threats made, none against deceased. Threats against policeman did not include deceased. *Shaw* v. *State,* 30 So. 42. The first and second instructions granted the state—Record Vol. 2, page 392, are errors, I respectfully submit. These instructions told the jury in effect that Culpepper had

a right to arrest the appellant without a warranty if they believed from the testimony that appellant was a deserter from the army. These instructions ignore the proposition of law that the arrest must be legal.

We submit that it was an attempt to make an unlawful arrest for the reason that it does not appear from the testimony that the officer was armed with a warrant issued by some court of competent jurisdiction and in addition thereto, the appellant had not committed a felony; had committed no offense in the presence of an officer and known to an officer at the time; had committed no offense against the laws of the state of Mississippi.

If arrest was illegal then the appellant had the right to resist same. The granting of the two above-mentioned instructions and the refusal of court to instruct the jury for appellant, that the arrest was illegal constitute reversible error. The court should have granted instruction 19 for the appellant. The same correctly stated the law and error was committed when same was refused, we respectfully submit. Same may be said of the refused instructions numbered 16, 17, 18, 20 and 21, requested by appellant.

It has been a rule of universal acceptance that an officer has no legal right to place under arrest any man without the lawful authority so to do in the form of a warrant unless the party apprehended be charged with the commission of a felony or commits an offense against the law in the presence of the officer.

In this instance the appellant had committed no felony nor had he committed any offense known to the officer in his presence. Not having committed a felony; nor charged with commission of felony or the crime in the presence of officers, the deceased had no authority under the law to shoot appellant or attempt to place him under arrest even though the appellant at the time might have been a deserter from the ranks of the army.

Under authority of *Johnson* v. *Cunningham*, 107 Miss. 140, an officer in attempting to arrest a person charged with a misdemeanor and causing death by firing gun at him is liable in damages and the court in no uncertain terms condemns the practice of officers in the promiscuous use of firearms when persons are only charged with misdemeanors.

Here appellant had violated no law of the state of Mississippi and we submit the court was in error when it refused to charge that under the testimony the attempted arrest was illegal. So we submit that in view of the errors complained of, so apparent from an examination of this record, that this appellant should not suffer the extreme penalty of the law under this judgment but that the same should be reversed and appellant awarded a new trial.

*R. N. Bordeaux,* for appellee.

Assuming that the court's attention was called to the defendant's motion, and that the court ordered the defendant to be served with a copy and that the defendant was not served with a copy until Saturday afternoon at 4 o'clock and that the defendant was compelled to go to trial the following Monday we submit that the learned trial judge was eminently correct in overruling the motion to quash the venire.

While learned counsel for appellant cites a number of cases in support of his contention in this respect, we submit that not one of them is directly in point, and we further submit that if all the courts of all the other states in the Union were to hold that Sunday was not to be computed, that even then there would be no merit in the contention of counsel, and that the decision of other courts declaring or establishing a method of computing time, could and would have no weight with this court because our legislature in plain and unmistakable language

has, in section 1606 of the Code of 1906, removed all doubt 'from the subject and established a rule for computing time in Mississippi.

Recognizing the conflict in authorities and the doubts and uncertainties that will arise and the plausible arguments advanced to sustain the different methods or motions of computing time, it occurs to us that our legislature enacted section 1373 for the very purpose of obviating the question raised by counsel for appellant in this case. In other words, the legislature established a plain, simple and certain rule for computing time in all cases, and expressly provided that when the last day falls on Sunday, it shall be excluded. "But in all other cases, Sundays shall be reckoned in the computing of time." Therefore, we confidently submit that Sunday was an intervening day and should be reckoned in the computing of time in this case because Monday was the last day or return day, and that the defendant had a copy of the indictment and a list of the special venire delivered to him at least one entire day before said trial. We do not see how this motion to quash the special venire could be sustained without judically repealing section 1606 of the Code of 1906.

The granting and refusing of instructions.

The only question involved in the alleged error of the court below in the granting and refusing of instructions is the right of Culpepper, a constable of Mississippi, to arrest the appellant, a deserter 'of the United States Army. We think that the decision of the Missouri court in the case of the *State* v. *Pritchett*, 219 Mo. 106, 119 S. W. 302, is sound and announces the correct principle and should be followed by this court.

Conclusions: We submit that this evidence as believed by the jury shows the deliberate murder by a deserter from the Army of one of the law officers of Mississippi; that notwithstanding how shocking the crime was and

notwithstanding the color of the appellant or the color of the deceased, that just and charitable laws applied and enforced by learned, fair and impartial judge accompanied this appellant throughout his trial. This appellant had the benefit of every guarantee under our laws, and was tried fairly and impartially, and in our opinion, we unhesitatingly say that we have never seen a record as free from error, and we respectfully submit that the case should be affirmed.

*Martin Miller,* for appellee.

As counsel relied chiefly on the ground that Sunday could not be counted in computing time within the meaning of the statute, which provides that a copy of the indictment and venire must be served upon appellant or his counsel an entire day before trial, I shall address myself at this point more at length.

Counsel relies on the Alabama case in 59 So. 363, styled *Haisten* v. *The State,* the court will see upon close examination of this case that it is entitled to little or no weight, in view of the facts of that case and in view of the Alabama statute. The Alabama statute provides that a copy of the indictment and special venire must be served forthwith upon the defendant. The facts in this particular case shows that the defendant was arraigned on Monday, February 19th and the special jury drawn and an order that the defendant be forthwith served with a copy of the special jury and indictment and that the defendant was not forthwith served with a copy of the special jury list and indictment, but was only served with it a few minutes before the defendant was put to trial. It is plain that under this statute and under the facts of this case that the statute was not complied with. This is not authority in the present case, where the statute of Mississippi is different and where the facts of this case are so different. The truth about the business is that the sheriff served a copy of the special venire

on appellant as soon as service could be had on the veniremen.

The other cases with the exception of the Nixon case in appellant's brief are set out in the Haisten case cited above. Appellant on this point cites *Nixon* v. *The State*, reported in 2 Smedes & Marshall on page 497. Upon a close reading of the Nixon case, the court will readily see that it is not authority for the contention made by the appellant to the effect that one entire day before the trial means one entire judicial day; that is to say, that Sunday does not count within the meaning of the statute. The lower court in passing on appellant's motion for a new trial as to this point, said: "The only ground that is urged by counsel at this time is the fact that a copy of the indictment and the venire drawn and summoned, was served on the defendant at four o'clock on Saturday, when the trial began on Monday, He cites in support of that contention the case of *Nixon* v. *The State,* Second Smedes & Marshall, in which the court made use of language like this:

" 'The statute gives the accused a right to an examination of the indictment. "at least two whole days before the trial." Service of the copy must have been made sometime on Thursday, and he would have been entitled to the days of Friday and Saturday for its examination with the advice of counsel. The statute intended two entire judicial days.' "

In passing on the case at bar it is necessary to see what was before the court at that time in order to determine what is meant by the use of the word, "judicial." It says: "Two entire judicial days." The question of whether the days the court referred to are days upon which judicial proceedings can be held was not before the court at this time. But the question there was whether or not it could couple a part of two days together so that it counted up forty-eight hours, and you would have two days. And the court held that you could

not couple part of one day together with part of another
day, and make an entire day simply when you had
twenty-four continous hours. By that it is meant judi-
cial days, and used in judicial sense it means that an
entire day begins at midnight and ends at midnight the
next night. That is what the court meant when is said
two entire "judicial" days, in my opinion and in my
judgment. If I am wrong about it, however, and if the
court intends to say in that case that he was entitled
to two entire judicial days, and they mean by judicial
days those days upon which judicial proceedings could
be had, then the opinion would have no weight whatever
because it would be *dictum*. That proposition was not
before the court, so as I see it, it leaves the proposition
just as if there had been no decision at all. In that event
a person would ordinarily use his common sense in de-
ciding what was the reason for this statute authorizing
or requiring that a copy be served one entire day before
the beginning of the trial, and the reasoning of counsel
would apply in my judgment.

But it is also true that there is no constitutional
guarantee that the defendant be given a copy of the in-
dictment and a copy of the venire at all. It is only by
reason of the statute. The legislature enacted a statute
requiring that to be done; the legislature can limit the
statute or they can entirely abolish it, if they see fit.
It is a matter left entirely to the action of the legis-
lature, and as I said before, in passing on a motion
for continuance in this case, that in my judgment section
1606, under the definition of words provides how it shall
be computed, and settles the question here regardless of
what the reason of the legislature may have been in
requiring this paper to be served one entire day. The
legislature came along later and defined its reason. I
have traced this statute back, and it first appeared in the
Code of 1880. At that time they were governed solely
and alone by the common law as to what was meant by

a given number of days required, or the given number of weeks or the given number of months, but the statute provides that Sunday shall always be reckoned in the computation of time unless Sunday happens to be the last day upon which the thing falls. This has to be done. So if it intervenes, or to use the exact words of the statute, "the last day falls on Sunday, it shall be excluded." In other cases Sunday shall be reckoned in the computation of time. In other words when Sunday intervenes under the statute, it shall be reckoned. I think under the rule as laid down in the Nixon case, they mean by an entire day from 12 o'clock at night until 12 o'clock the next night, and not simply twenty-four continuous hours. I don't think there can be any doubt but that Sunday is an intervening day. If it is an intervening day under the statute, section 1606 of the Code, it must be reckoned in the computation of time.

The only other point worth while that was raised by appellant in his brief was the court's refusal of certain instructions asked by appellant. If the court's idea of one's right to arrest a deserter is correct, then the action of the court as to this was correct. If not, the court was in error. The case the lower court followed as to this is the case of *The State* v. *Pritchett,* 219 Mo. 696, 119 S. W. 386, which holds that a constable may arrest a deserter without a warrant even when such deserter is out of the county or the state of which the constable is an officer. That the Acts of June 18, 1898, (30 U. S. Statutes at Large, 484C, chapter 469, section (6) gives any peace officer having authority to make arrests, the authority to arrest a deserter forthwith. The Pritchett case cited above, holds that a constable arresting a deserter, is acting as agent of the United States Government and not as agent of the state. If the deserter is a felon, then the court

could not do otherwise than to refuse the instructions complained of by appellant.

This court will take judicial knowledge that the country was at war and that the punishment for desertion in time of war may be death. Then can it be said that desertion is only a misdemeanor. The statement of the proposition is its own refutation.

The appellant has been given by the officers of the law and by the court a chance for his life, which was more than he gave Culpepper. Under the facts which stand out in this record as clear as a mountain on a landscape, this court will follow its past policy and uphold the verdict of the jury unless it appears that prejudicial error has occurred, and this is true even in those cases where this court, if acting as a juror, would have found different on the facts. *Felder* v. *State*, 67 So. 66; *Jackson* v. *State*, 63 So. 269; *Brown* v. *State*, 60 So. 726.

In our humble opinion, this defendant had a fair and impartial trial by a fair and impartial jury and a just and righteous verdict has been reached, and for these reasons, the case should be affirmed.

Stevens, J., delivered the opinion of the court.

Appellant was indicted, tried, and convicted for the murder of W. B. Culpepper, and sentenced by the circuit court of Lauderdale county to be hanged. From this judgment imposing the death penalty appellant appeals, and assigns a number of alleged errors relied upon for reversal. The proof for the state shows that Beeman Boatwright, at the time of the tragedy, September 5, 1918, was a soldier in the United States Army, and a deserter, having left Camp Funston without leave, and being in hiding in the mountains of Lauderdale county, some two or three miles south of the city of Meridian. Mr. Culpepper, the deceased, was a

lawful constable of beat No. 1, Lauderdale county. The
constable was on a mission to serve certain civil pro-
cess when he unexpectedly met appellant, asked appel-
lant his name, and appellant responded that his name
was "Willie Jones," whereupon the constable stated:
"No it is not; you are Beeman Boatwright, a deserter
from the Army, and I will have to arrest you." The
officer thereupon started to get down from his horse,
when appellant quickly pulled his pistol and shot the
officer in the stomach, inflicting a mortal wound. On
being shot, the officer caught appellant in the belt
and began striking him over the head with his pistol,
but appellant pulled away, breaking the belt, and
the officer thereupon opened fired and emptied his
pistol, and in doing so inflicted serious wounds on
appellant. The proof for the state is largely made
by the dying declaration of Mr. Culpepper. There is
no controversy about the fact that deceased was a law-
ful constable, in the active discharge of his duties
within his jurisdiction, and that appellant was a
deserter from the United States Army at a time of
active service, and that he was armed with a pistol.
Proof for the state further tends to show that appellant
had stated that he would not be arrested, and threatened
to kill any officer who should undertake to arrest him.
The proof for the defendant tended to show self-defense.
The questions argued at the bar are all questions of law,
and without a further or more elaborate statement
of the facts, or of the various motions made by the
accused during the progress of the trial, we proceed to
a statement of our views upon the only legal questions
which merit discussion.

We may state in the outset that there is no merit
in any of the assignments that the court erred in
refusing to continue the cause, to change the venue,
or to quash the special venire. There was, further-
more, no error in admitting testimony that appellant

several weeks before the difficulty uttered threats against any officer who should undertake to arrest him. *Harris* v. *State,* 72 Miss. 99, 16 So. 360.

The first, and about the only, point that has troubled the court is the contention that the defendant was not served with a copy of the indictment and of the special venire at least one entire day before trial, as provided by section 1481, Code of 1906 (section 1239, Hemingway's Code). Copy of the venire and of the indictment was legally served on appellant on Saturday afternoon at 4 o'clock, and the venire was returnable and the case called for trial the following Monday morning at 9 o'clock. It is the contention of appellant that the one entire day mentioned in the statute means a judicial or week day, and that the legislature in enacting the statute under review did not contemplate that Sunday should be considered in giving or estimating the one entire day. Appellant relies upon *Nixon* v. *State,* 2 Smedes & M. (Miss.) 497, 41 Am. Dec. 601. The state contends and the learned circuit judge ruled that section 1606, Code of 1906 (section 1373, Hemingway's Code) fully answers appellant's argument and rules the point under discussion. This section of the Code reads as follows:

"When process shall be required to be served or notice given any number of days, the day of serving the process or of giving the notice shall be excluded and the day of appearance included; and in all other cases when any number of days shall be prescribed, one day shall be excluded and the other included. When the last day falls on Sunday, it shall be excluded; but in other cases Sunday shall be reckoned in the computation of time."

This statute applies in all cases where process is required to be served or any lawful notice given, and, its language being plain, must be applied to the case at bar. It furnishes a uniform statutory rule for the

computation of time when any number of days is prescribed. There is a separate statute which furnishes the rule for computing a number of weeks, but the statute under consideration expressly provides that "the day of serving the process or of giving the notice shall be excluded and the day of appearance included," and "when the last day falls on Sunday, it shall be excluded; but in other cases Sunday shall be reckoned in the computation of time." So far, therefore, as the service of legal process or legal notice in concerned Sunday must be reckoned in the computation of time, with the one and only exception that "when the last day falls on Sunday it shall be excluded." This statute was not in existence at the time our court had up for consideration and delivered the opinion in *Nixon* v. *State, supra*. The court in the Nixon Case undertook to apply the proper common-law method of computing time, and in doing so employed language apparently in support of appellant's contention. But the sole point before the court in the Nixon Case was whether a part of two days could be joined together or counted in a way to make forty-eight hours, or the two whole days then provided by statute for the service of the copy. The court ruled that a part of one day could not be coupled with a part of another day, and thereby make an entire day, simply because thereby the defendant had twenty-four continuous hours. The court was not confronted with the question as to whether Sundays or legal holidays would be counted, but, conceding that the obversations of the court are not *dicta,* the Nixon Case has no application now because of the plain meaning of section 1606 of our Code. There is no way for the court to hold that this statute has no application. There is no serious contention that it can be ignored. It must be considered in the present case, and therefore properly construed and applied. There is force in the suggestion that Sunday in this

case was the one and only entire day given the accused, and therefore the last day; but to so hold would ignore the other plain provisions of the statute that the day of serving .the process shall be excluded and the day of appearance included. To reconcile therefore and give meaning to every word in the statute, Sunday in this case was an intervening day, and as such must be reckoned in our computation. It is no answer to say that Sunday is *dies non,* or that it is not a workday, or a day upon which judicial proceedings are held. The wisdom of the statutory rule is for the legislature. The right which the accused has to the one-day service of the venire and indictment is not a constitutional, but a statutory, right, and the legislature which confers the right may, of course prescribe the statutory rule ·for reckoning the time.

The supreme court of Louisiana in *State* v. *Baudoin,* 115 La. 837, 40 So. 239, held that the two days given the accused by the Louisiana statute (section 992, Revised Statutes) need not be judicial days. In the case of *Payton* v. *State* (Tex.), 34 S. W. 615, it was ruled that Sunday as an intervening day should be counted, the Court of Criminal Appeals, by HENDERSON, J., observing:

"Appellant contends that he was placed upon trial before two full days had elapsed after he was served with a copy of the indictment. The court's explanation shows that the indictment was served on him on Saturday, and he was not brought to trial until Tuesday. The contention of the appellant that Sunday should not be counted is groundless.

Our conclusion, then, on this point is that the statute governs; that Sunday in this case is an intervening day, and must be reckoned; and accordingly that appellant's assignment on this point must be overruled. Our conclusion on this point has been reached without consideration of the state's contention that request

or demand for a copy of the venire was not seasonably made, and without considering the further contention that the motion for a continuance of the case for the term should not be regarded as an application to postpone the trial to a later day of the term.

The only other legal question of any merit arises from the refusal of the court to grant the defendant certain instructions based upon the idea that Mr. Culpepper, although a lawful constable, had no right to arrest appellant, a deserter. It is said in 5 Corpus Juris, 410:

"Formerly a civil peace officer had no right to arrest without a warrant or military order a deserter from the United States Army; but this rule has been changed by act of Congress expressly authorizing any civil officer of any state to arrest deserters without a warrant."

The act referred to is that of June 18, 1898, 30 U. S. St. L. 484, chapter 469, section 6 (U. S. Comp. St. section 2297). Based on this statute, the supreme court of Missouri in *State* v. *Pritchett*, 219 Mo. 696, 119 S. W. 386, upholds the right of a constable of Missouri to arrest a deserter without warrant.

The testimony in the present case shows that Mr. Culpepper knew Beeman Boatwright; that appellant also knew the officer; and that the officer, at the time he undertook to arrest appellant, did not merely have a suspicion that appellant was a deserter, but was confident of the fact, and there is no dispute in the record that appellant had in fact left his post of duty at a time when our government was at war. The testimony of the state further tends to prove that appellant resisted arrest, and in so doing exhibited and used a deadly weapon. We are of the opinion that is was not only the right, but the duty of the constable, under such state of facts, to place appellant under arrest, and his action in doing so needs no apology. The officer in this

case was backed and protected by the law of the land, and surely the law cannot be defied. Regardless of the right of the officer to arrest in this case with or without a warrant, the dying declaration of the deceased is to the effect that appellant fired the fatal shot while the officer was in the act of dismounting from his horse, and before the officer had employed any force whatever in making the arrest.

This case has had our most careful consideration, and on all points argued the judgment of the circuit court must be affirmed; and Friday, the 6th day of February, 1920, is hereby fixed as the day of execution.

*Affirmed.*

SMITH, C. J., and SYKES, J., dissent.

SMITH, C. J. The provision of section 1481, Code of 1906 (section 1239, Hemingway's Code), here in question is as follows:

"Any person indicted for a capital crime shall, if demanded by him, by motion in writing before the completion of the drawing of the special venire have a copy of the indictment and a list of the special venire summoned for his trial, delivered to him or his counsel at least one entire day before said trial."

The day therein contemplated is a "clear" day of twenty-four hours (*Carter* v. *Henry,* 87 Miss. 411, 39 So. 690, 6 Ann. Cas. 715), begins at 12 o'clock midnight, ends at 12 o'clock on the night following (*Robertson* v. *State,* 43 Ala. 325; 17 C. J. 1131), and is a day other than Sunday (*Robertson* v. *State, supra;* 22 Am & Eng. Ency. of Law [2 Ed.], 388).

Sunday in law is *dies non,* and in the case at bar counsel for the appellant was not only not required by law to work on Sunday in order to prepare his client's case for trial. but, on the contrary, had he violated the Sabbeth by so doing, he would have come within the

condemnation of section 1366, Code of 1906 (section 1102, Hemingway's Code). Moreover, for obvious reasons, the facilities for inquiring into the qualifications of prospective jurors are more limited on the Sabbeth than on a secular day.

The provision of section 1606, Code of 1906 (section 1373, Hemingway's Code), that "when the last day falls on Sunday, it shall be excluded; but in other cases Sunday shall be reckoned in the computation of time"— probably has no application here, for it seems to deal with the computation of time in cases involving more than one day; but if it does apply, then it is manifest that Sunday cannot be counted against this appellant, for the last day given him in which to examine the indictment and jury list was Sunday. Monday cannot be counted for the reason, among others, that the appellant was not only not given that day in which to examine the indictment and jury list, but, on the contrary, was prevented on that day from so doing by being put on his trial.

If the statute required the delivery of a copy of the indictment and of the jury list to a person charged with a capital crime, in order to notify him of the day on which he is to be tried, and to require his presence there, then it may be that the day on which he should appear for trial should be counted; but such is not the purpose of the statute, for the requirement of the delivery of the copy of the indictment and of the jury list to the prisoner is that he or his counsel may have at least one entire day in which to prepare his answer to the indictment, and to inquire into the qualifications, bias, prejudice, interest, etc., of the persons from whom the jury by which he will be tried are to be drawn. The right is a very valuable one, is indispensable to the orderly and humane administration of the criminal law, and should not be frittered away by judicial decision.

It was not necessary for the court below to have continued the case in order to have given the appellant his full right under the statute. All that was necessary to have been done was to have passed the case for one day.

For the foregoing reasons my Brother SYKES and I are of the opinion that the judgment of the court below should be reversed and the cause remanded.

. HOLDEN, J. (especially concurring). I concur generally and specially in the affirmance of this case. First, I do not think the accused was deprived of his right to have a copy of the indictment and list of the venire delivered to him "at least one entire day before trial," under sections 1481 and 1606, Code of 1906 (sections 1239 and 1373, Hemingway's Code). Second, that in view of the fact that the service required by the statute was had one whole day and a part of two different days before the trial, and the further dominating fact that this record shows overwhelming and manifest guilt in the murder of an officer while in the lawful performance of his duty by a dangerous and desperate outlaw, impels me to conclude that the right result was reached and justice was done, and that no other result could have been reasonably reached by any fair-minded jury that might have been impaneled.

It will be observed that since the decision of the *Nixon Case,* 2 Smedes & M. (Miss.) 497, 41 Am. Dec. 601, the statute (section 1606, Code of 1906) was enacted. This statute, which of course must now prevail, undertakes to prescribe how time shall be computed in the service of process or notice in all cases. From a careful reading of this statute, and considering it in all of its parts and as an entirety, it becomes obvious that the legislature has said, in substance, that Sunday shall not be computed when it happens to be the last day, but that in all other cases where Sunday is an

intervening day it "shall be reckoned in the computation of time."

The argument and reasoning of the dissenting opinion in this case is plausible upon first view, and seems to be based upon the theory that Sunday being a *non dies,* and that the statute requires service of an entire day, and that Sunday in this case was the only day, and therefore the last day, it must be excluded in the computation here. This conclusion would be sound if it were not for the very language and meaning of the statute itself.

The accused is entitled only to the right as given by statute, and in determining that right the two statutes must be looked to solely. In the case at bar I do not think that the first day, Saturday, or the last day, Monday, which was the day of trial, can be counted as an "entire day," because the first and last days here were fragments of days, and not an entire day, as provided by the statute (section 1481, Code of 1906). But there was an "entire day" intervening between Saturday and Monday. The intervening day happened to be Sunday. Under the common law it was *"non dies,"* no day; but here, under this particular statute, it is made and considered a day for the purpose, and required to be computed as a day, which is an entire day, as given the accused by the statute. Certainly the legislature may provide that Sunday shall be computed as an entire day so far as the prescribed right of the accused is concerned. The accused would have no right to a day at all, were it not for the legislative act; and when that act provides that Sunday shall be counted as a day whenever it is an intervening day it establishes Sunday as a day to be computed in such cases; therefore, while the reasoning in the dissenting opinion sounds well from the point of benefit to a defendant, still it cannot be the right view here, because the language and intent

of the statute is to the contrary. The dissenting opinion errs in attempting to make Sunday *"non dies,"* and the last day, when the statute makes it a valid day for computation when it intervenes, as here, between other days of service and appearance, and is consequently not the last day.

The main opinion herein cites authorities which sustain the point of view expressed above. It seems that the authorities generally hold that, when the computation of time is fixed by the statute, then the common-law rule with reference to the computation of time shall yield to the statute, and that only so much as is prescribed by the statute shall be allowed in such cases.

I say then that under the statute (section 1606, Code of 1906) in all cases when Sunday is an intervening day it must be computed, otherwise the statute would have little meaning in any case unless the time prescribed for the service should be a plural number of days. See section 1604, Code of 1906. Here the time granted was one entire day. Sunday was not the last day within the meaning of the statute, but was an intervening day. The accused had a part of Saturday and a part of Monday and all of Sunday in which to consider the list of the venire delivered to him. While neither Saturday or Monday could be counted as an entire day because they were fragments of days, nevertheless they were both judicial days upon which service could be had and action taken, and are to be reckoned as days for the purposes of service and appearance under the statute. The statute does not provide that the "entire day" shall be a weekday or judicial day, but plainly intends that there shall be no exception for the computation of time whenever the Sabbeth day is an intervening day. This conclusion harmonizes the two statutes involved, satisfies the requirement of an "entire day" of section 1481, Code of 1906 (section 1239,

Hemingway's Code), and is an effective and reasonable construction of section 1606, Code of 1906 (section 1373, Hemingway's Code). Therefore I must decide that the rights of the appellant here are governed solely by the statute, and that the lower court did not err in the matter complained of.