## LAMBERT v. STATE.

(Division A.   Dec. 10, 1934.)

[158 So. 139.   No. 31399.]

Frank Clark, of Waynesboro, for appellant.

476

**Wm. H. Maynard**, Assistant Attorney-General, for the state.

Argued orally by **Frank Clark**, for appellant, and by **Wm. H. Maynard**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant was convicted of murder. A motion made by the appellant for a change of venue was refused. There was a conflict in the evidence introduced on the hearing of this motion, and the ruling of the court thereon seems to be correct. Moreover, we would have to say, in order to reverse the ruling, that it was manifestly wrong. This cannot be done.

Motions by the appellant to quash the indictment and the special venire drawn for the trial of the case were overruled. The ground of these motions is that the jurors were not selected in the manner provided by sec-

tions 2039 and 2040, Code 1930. The trial judge did not draw the jurors at the preceding term of the court, as provided by section 2039, but they were drawn by the sheriff and the clerks of the circuit and chancery courts in vacation, in accordance with section 2041, Code 1930. The appellant's contention is that sections 2039 and 2040 govern the drawing of jurors for regular terms, and section 2041 governs the drawing of jurors for special terms, of the circuit court. Section 2041 applies to both regular and special terms of the court, its purpose being to take care of the situation which arises when section 2039 has not been complied with.

A motion by the appellant for a continuance because of the absence of a witness he desired was overruled. There are several reasons why this ruling is correct, one such reason being that the evidence would have been merely cumulative to that of other witnesses who testified for the appellant.

The appellant's request for an instruction requesting the jury to return a verdict of not guilty was refused. The evidence, in substance, is as follows: Bad feeling existed between the appellant and the deceased, growing out of a controversy over an account which the deceased claimed the appellant owed him. Several witnesses testified that on different occasions, sometimes in the presence of the deceased, the appellant threatened to kill the deceased or to "cut his guts out;" the language of the threats varied, but this is the substance thereof. Some of these threats were out of the presence of, and were not communicated to, the deceased. The appellant is seventy-two years of age, in bad health and physically weak, and weighs between one hundred fifty and one hundred sixty pounds. The deceased was about fifty-nine years old, his weight being variously estimated, some of the witnesses stating that he weighed about one hundred ninety-three pounds. The killing occurred in

the town of Leakesville, on one of the streets of which was situated a cafe and filling station operated by the deceased. On the occasion in question the deceased was either standing or sitting in front of either his cafe or filling station when the appellant came out of a store on the opposite side of the street, whereupon an altercation arose between them. The evidence is conflicting as to which of them began this altercation, and the jurors could have arrived at a conclusion either way relative thereto. During the course of this discussion the appellant had an open knife in his hand—when and from where he obtained the knife does not appear—but the evidence warrants a finding that he did not have it in his hand when the altercation began. According to the evidence for the appellant, the deceased at one stage of the altercation said, ''I have a good mind to come over there and beat hell out of you.'' This remark was not heard by the witnesses for the state, but the jury could have found that it was made. According to the evidence for the state, the appellant dared the deceased to come to him, whereupon the deceased said, ''I will come,'' and immediately crossed the street to where the appellant was. The appellant at one stage of the controversy walked a few steps away from where he was when the altercation began, but it is clear that when the deceased crossed the street the appellant was standing still, facing the deceased, and, according to the evidence for the state, with his right hand behind his back with an open knife in it. The deceased was without coat or vest and was unarmed, though, according to the evidence of the appellant, he had his right hand in his right hip pocket while crossing the street. When the deceased reached the appellant, each, according to the evidence for the state, asked the other if he liked what had been said, and each replied, ''I do not,'' whereupon the deceased struck the appellant with his hand either once or twice on the side of his head.

The appellant then immediately stabbed the deceased twice, once in the chest and once in the abdomen. On the deceased saying, "You cut me," the appellant replied, "I told you I would cut your G—— d—— guts out, you s—— of a b—— you." The deceased died from the wounds inflicted on him. On this evidence the court below, of course, committed no error in refusing to direct the jury to return a verdict for the appellant.

The threats of the appellant to kill the deceased, though not communicated to the deceased, were "admissible in evidence, as evincing malice and premeditation and tending to prove the criminal intent charged in the indictment." 30 C. J. 154; Riggs v. State, 30 Miss. 635; Brown v. State, 98 Miss. 786, 54 So. 305, 34 L. R. A. (N. S.) 811; Johnson v. State, 85 Miss. 572, 37 So. 926; Boatwright v. State, 120 Miss. 883, 83 So. 311. In the Johnson case it was said that: "It is an elementary principle that the acts, conduct, and words of a party accused are admissible in all cases where they tend to show either a motive for the commission of the crime or evince malice towards the party afterwards killed."

The court charged the jury for the state that they might take into consideration all threats against the deceased by the appellant in determining who was the aggressor in the difficulty, and "that if you believe from the evidence beyond a reasonable doubt that the defendant provoked the difficulty in this case which resulted in the death of the man Williams and provided himself with a deadly weapon to be used if necessary in overcoming opposition and as a result thereof he slay (?) his adversary, it is murder." The appellant's only objection to this instruction is that there was no evidence warranting the jury to find that the appellant provoked the difficulty or that he provided himself with a weapon for the purpose of overcoming opposition

therein; but the contrary will appear from the statement of the evidence hereinbefore set forth.

The court refused the appellant's request to charge the jury "that malice cannot be inferred against the defendant merely because he used a deadly weapon." We will assume for the purpose of the argument that this instruction announces a correct principle of law, but if so, its refusal constitutes no reversible error, if error at all. The state did not invoke, by any of its instructions, the presumption of malice arising from the use of a deadly weapon, and when the instructions granted the state and the appellant are read together, it seems clear that the granting of this instruction could have added nothing to the jury's consideration of the appellant's contention that he stabbed the deceased not with malice but in self-defense.

The other assignments of error are not of sufficient merit to require a specific notice thereof.

Affirmed.