GILLESPIE, Chief Justice,
dissenting:
I dissent as to the two evidence questions decided by the majority.
I.
I think the testimony of Sheriff Brunt and former County Attorney Caldwell, that the deceased reported a threat on his life and inquired about placing the defendant under a peace bond and whether he could arm himself, is admissible to show the state of mind of Jones.
Generally, hearsay problems do not arise in cases where the defendant seeks to show that the victim had previously threatened him. Communicated threats made by the victim to the defendant are commonly admitted to show the effect the threat has on the state of mind of the defendant. When the defendant relies on self-defense, his state of mind is relevant in an inquiry of whether or not he acted reasonably. Eaton v. State, 200 Miss. 729, 28 So.2d 230 (1946). When offered for such purpose, its value, simply, is not dependent on whether or not the statement is true.
Where, however, testimony is elicited from a witness who was told by the homicide victim that the defendant had previously threatened him, a serious hearsay question arises, depending upon the purpose for which such testimony is offered. If the State were permitted to introduce such testimony to prove that a threat was made which would have the tendency to prove by inference that the defendant carried out his threat or to prove by inference the identity of the criminal agency, then the state of mind exception would be allowed to swallow the hearsay rule. See Commonwealth v. DelValle, 351 Mass. 489, 221 N.E.2d 922 (1966); Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); Contra People v. Merkouris, 52 Cal.2d 672, 344 P.2d 1 (1959) (Overruled by West’s Ann.Cal.Evid. Code § 1250[b]). If, however, the reported threats are offered to show merely the deceased’s state of mind, then that testimony is not objectionable hearsay. Such testimony is particularly relevant to an inquiry when it is needed to explain subsequent conduct by the decedent. See People v. Atchley, 53 Cal.2d 160, 346 P.2d 764 (1959); People v. Finch, 213 Cal.App.2d 752, 29 Cal.Rptr. 420 (1963); 6 Wigmore, Evidence § 1714, at 91, n. 1 (Chadbourn Rev.1976).
In the instant case, independent evidence establishing that a threat was made had been admitted prior to the testimony of Brunt and Caldwell. Mrs. Jones testified that she heard the defendant threaten her husband. Her testimony is direct proof that a threat was made by Daniels against *923 Jones. Mrs. Gardner also testified that Daniels made a threat in her presence to kill Jones. Although the effect of the testimony by Brunt and Caldwell may bolster that of Mrs. Jones and Mrs. Gardner, that effect is merely incidental to the real purpose of their testimony, i. e., to show that Jones was in a state of mortal fear. Also, since there is no question as to whether or not Daniels fired the fatal shot, it is apparent that the testimony by Brunt and Caldwell was not used to infer the identity of the slayer.
It would have been appropriate under these circumstances for the jury to have been instructed to consider the testimony of Brunt and Caldwell only for the purpose of showing the deceased’s state of mind. However, the defense counsel did not request such an instruction, and I cannot say that the trial judge erred in not taking it upon himself to so instruct the jury. In 29 Am.Jur.2d Evidence §§ 262, 263, at 310-312 (1967), it is stated:
Evidence may be clearly incompetent for one purpose but be entirely proper for another purpose; such evidence is admissible for the latter purpose even though the jury may erroneously use it for other purposes, unless the risk of confusion by the jury is so great as to upset the balance of advantage of receiving it.
% £ Sfc Jfc $ Sf«
Evidence which is incompetent as to one issue or party, but admissible as to another, cannot properly be considered for its bearing on the former issue or party. Such evidence should be offered by a party and received by the court only for the specific purpose for which it is competent. The court should limit its application by proper instructions, at least when requested to do so or when objection is made to the introduction of the evidence. There is authority to the effect that the opponent of the evidence must ask for the instruction, otherwise he will be held to have waived it as unnecessary for his protection.
Where evidence admissible only for a specific purpose is admitted generally and no request is made to have its effect limited, it is before the jury as evidence generally, and is a proper matter for comment by the trial judge. Evidence introduced without limitation of purpose is in for all purposes.
The fact that threats were made had been overwhelmingly proven by other evidence prior to the testimony of Brunt and Caldwell. There was no question over whether Daniels fired the shot that killed Jones. It is abundantly clear that any prejudicial sting that could have arisen from the Brunt-Caldwell testimony was negated by the previously proven facts. Certainly the risk of confusion on the part of the jury was minimal in nature. Daniels’ attorney made only a general objection to the Brunt-Caldwell testimony. From the briefs filed it is apparent, however, that his attorney did not feel that such testimony was within the permissible bounds of the res gestae exception to the hearsay rule. While I agree that such testimony would not have been admissible under res gestae, it was admissible to show the deceased’s state of mind. It is the duty of the attorney representing his client to make specific objections. If evidence should be limited for a specific purpose, it is the attorney’s duty to make such a request to the trial judge, otherwise it will be deemed waived.
II.
Smith testified that at about noon on the day of the fatal encounter, he had a conversation with the defendant. At that time the defendant knew that Mrs. Gardner had rented her land to another and during the conversation, defendant said, “Now she [Mrs. Gardner] better not cut that water off because I’ll put a stick of dynamite in my line which if it blows up my water, it blows up hers too.” An objection was made and the court heard the parties in chambers, after which the court stated to the jury, “Ladies and gentlemen of the jury, you will completely disregard the statement made by this witness about dynamiting the well of Mrs. Gardner. You are to completely disregard it. The statements will not enter *924 into your verdict one way or the other — the motion for a mistrial is overruled.”
I am of the opinion that this evidence was admissible notwithstanding the State’s position on this question. And, in any event, the case should not be reversed because the court sustained the objection and carefully admonished the jury to disregard the statement of the witness. Obviously, if the testimony was admissible and the trial court erred in excluding it, no error was committed in overruling the motion for a new trial.
The rule given in 6 Wigmore, Evidence § 1732, at 158 (Chadbourn Rev.1976) is that “[statements before the act, asserting malice or hatred, are always received against an accused; except so far as the time of feeling is so remote as to make it irrelevant. . ” In 1 Wigmore, Evidence § 106 (3rd ed. Supp.1975), the cases involving generic threats are collected. The rule gathered from the following cases is that nonspecific threats, acts, conducts, and words of a party accused are admissible in all cases where they tend to show either a motive for the commission of the crime, or evince malice toward the party afterwards killed.
In Lambert v. State, 171 Miss. 474, 158 So. 139 (1934), this Court quoted the following statement from Johnson v. State, 85 Miss. 572, 37 So. 926 (1904):
“It is an elementary principle that the acts, conduct, and words of a party accused are admissible in all cases where they tend to show either a motive for the commission of the crime or evince malice towards the party afterwards killed.” 171 Miss. at 480, 158 So. at 141.
In Sandifer v. State, 192 So. 342 (Miss.1939), the Court held that in a murder prosecution, evidence of statements by the defendant three or four hours before the homicide that he was going to kill somebody was admissible as tending to show that the killing was with malice aforethought.
In Massey v. State, 19 So.2d 476 (Miss.1944), the Court said:
There is a well established exception to the general rule and this case comes within it. On the trial of an indictment a previous crime threatened or committed by defendant can be proved “(a) where it is connected with the one charged in the indictment, and sheds light upon the motive of defendant or (b) where it forms part of a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts.” (Citations omitted). 19 So.2d at 476-477.
The authorities of other states are to similar effect. In Caddell v. State, 129 Ala. 57, 30 So. 76 (1901), the Court stated:
Mere threats, when directed to a particular person, are not evidence of malice or evil purpose towards another, nor can threats which are merely general be considered as menacing any particular person; but the threat in question was neither so restricted nor general. It comprehended those who might interfere with defendant’s relations with Mrs. Gardner; and if there was evidence indicating that defendant believed the deceased so interfered, and that he instigated her death, the threat was competent to be shown, and the question of whether the threat applied to her was for the jury. Ford v. State, 71 Ala. 385; Jordan v. State, 79 Ala. 9; Redd v. State, 68 Ala. 492. The threat against whoever might interfere with defendant and Mrs. Gardner, and likewise acts of undue intimacy between him and her, were admissible, as tending to show his infatuation for that woman, and consequently as disclosing a motive for inciting the crime. Johnson v. State, 94 Ala. 35, 10 So. 667. And as further evidence of motive, induced by an actual interference, it was proper to prove the prosecution for adultery, by introducing the affidavit and warrant in that case. Evidence of motive, whether proceeding from malice or other cause, is always admissible for the prosecution, as making a conspiracy probable. 30 So. at 78-79.
In Commonwealth v. Glover, 446 Pa. 492, 286 A.2d 349 (1972), the Court admitted *925 testimony of threats against others than the person killed and stated as follows:
The evidence was properly admitted to demonstrate the existence of ill feeling and motive on the part of Glover directed against Miss McKinnon and her friends. It is well settled that “[ejvidence to prove motive, or intent, or plan, or design, or ill will, or malice is always admissible.” (Citations omitted).
The state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time. (Citations omitted).
While proof of ill will and prior acts of hostility in the context of a homicide usually demonstrate the state of mind of a defendant to the victim himself, under the circumstances of this case, the evidence of bad feelings towards Miss McKinnon and Milner was relevant to the Robinson homicide. 286 A.2d at 351.
In discussing an earlier ease, the Pennsylvania Court said:
The instant situation is not unlike that dealt with in Commonwealth v. Minoff, 363 Pa. 287, 69 A.2d 145 (1949), which involved a bitter quarrel between two disputing factions of a church congregation. The hostile acts and threats of violence of the defendant in that case against one member of the opposing faction was held admissible as evidence at his trial for the homicide of two other members of the same division. “Here, the evidence of the prior threats was admissible to show the quo animo of the defendant under like mental stimulus toward certain persons with respect to a particular subject.” Id. at 295, 69 A.2d at 149. In the case at bar, threats to Miss McKinnon and her male friends were most relevant to demonstrate Glover’s quo animo to other male friends of his former paramour, particularly since Mil-ner was present to act as the “mental stimulus” that precipitated the rage. 286 A.2d at 352.
And, in State v. Meidle, 202 S.W.2d 79 (Mo.1947), the Court admitted non-specific threats in a murder case, holding that the veiled threats of the defendant toward those who might trespass upon his land were relevant and admissible to prove the existence and design of the state of mind from which defendant’s acts of shooting proceeded and supports the inference of defendant’s criminal purpose or intent in firing the fatal shot.
Applying these principles to the ease at bar, I think the testimony of witness Smith was admissible under the circumstances. In this case, the controversy arose out of Mrs. Gardner’s leasing of the property to Bennett. There is no question that the defendant was angry at Jones and Mrs. Gardner, and that he had threatened Jones because of what Mrs. Gardner had done upon Jones’ advice. The testimony of the threats against Mrs. Gardner show the state of mind of the defendant which involved the same mental stimulus that generated the anger toward Jones. The jury should not have been denied the right to take this into consideration as revealing the defendant’s state of mind in determining who was aggressor in the fatal encounter. It is all intimately woven together.
WALKER, J., joins in this dissent.