465 So.2d 1031 (1985)
Howard HAMMOND
v.
STATE of Mississippi.
No. 55488.
Supreme Court of Mississippi.
February 27, 1985.
Rehearing Denied April 10, 1985.
*1032 Daniel P. Self, Jr., Franklin M. Coleman, Meridian, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Howard Hammond was found guilty in the Circuit Court of Lauderdale County, Honorable Lester Williamson, presiding, for the murder of Shirley Hammond, his wife, and was sentenced to serve a life term in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns four (4) errors in the trial below.
Appellant and his wife went fishing on Saturday, December 4, 1982. They arrived at the fishing area about 2:40 in the afternoon. It consisted of several lakes and a creek, which was swollen due to rains during the day.
According to appellant, he and Mrs. Hammond had drunk several rum and cokes before arriving at the fishing spot, but were not drunk. He testified that they went to the creek bank and began rigging their fishing gear; that Mrs. Hammond had everything prepared for fishing except she had not baited her hook; that appellant started walking up the creek and had gone about 400 feet when he heard Mrs. Hammond make a noise, although it was not a cry for help; that he turned around and could not see her, ran back to where she had been standing and jumped into the water, but could not find her; that he finally gave up his search and called the sheriff's office and notified the sheriff about what happened. Dragging operations were begun and Mrs. Hammond's body was found in the creek on the following Monday, December 6.
An autopsy was performed on the body by Dr. Patrick Spraberry. He found numerous blows about the head and face of the body, but no marks elsewhere on it. Photographs in the record indicate the violence of the blows to the victim's head. It was the opinion of Dr. Spraberry that Mrs. Hammond died of "massive cerebral edema" resulting from a blow(s) inflicted by a blunt instrument. He found no water in the lungs which indicated to him that she did not drown.
Life insurance agents for New York Life Insurance Company and Life of Georgia Insurance Company testified that Mrs. Hammond had two life insurance policies issued either in June, 1980, or 1981, with double indemnity death benefits for a total of $340,000, and that Life of Georgia Insurance Company had issued an insurance policy on the life of Mrs. Hammond in the sum of $50,000 with double indemnity benefits. *1033 Appellant was the beneficiary in those policies. On December 3, 1982, appellant telephoned Mr. Vincent, an agent for Life of Georgia, and inquired about the policy with that company to be sure the policy was still in effect. He asked Vincent whether the policy paid double for accidental death and who the beneficiary was in the policy.
James Troxal testified for the State that in February, 1982, he was operating a bar in Meridian and that appellant approached him one night and offered him $5,000 to kill his wife and make it look like an accident; that appellant said he needed the deed done because there was insurance involved; that Troxal refused the offer and Hammond left, but the next day he returned to the bar and told Troxal to forget what they had talked about. Doug Troxal, brother of James Troxal, testified that he heard the conversation between James Troxal and appellant.[1]
George Williams, employee with the Department of Wildlife, participated in the dragging operations for the body of Mrs. Hammond. He testified that the fishing rod was recovered from the creek which appellant identified as belonging to Mrs. Hammond. They only found the butt section of the rod with a closed face spinning reel on it. The line was still inside the reel and had not been rigged for fishing.

I.

THE LOWER COURT ERRED IN PERMITTING THE STATE TO INTRODUCE TESTIMONY OF A SOLICITATION ON THE PART OF APPELLANT TO PROCURE THE MURDER OF HIS WIFE AS SAID INCIDENT WAS TOO REMOTE IN TIME TO THE DEATH OF THE DECEASED TO BE OF PROBATIVE OR EVIDENTIARY VALUE.
Appellant objected to the testimony of the Troxals that he solicited James Troxal to kill Mrs. Hammond on account of the insurance. The basis for the objection was that the solicitation occurred ten (10) months prior to Mrs. Hammond's death and that it was remote, irrelevant and unduly prejudicial. The Court has said that in determining whether or not a threat may be too remote to be admissible, the trial court exercises its discretion in deciding whether such evidence should be admitted. In Grooms v. Pace, 357 So.2d 292 (Miss. 1978), discussing this question relating to threats, the Court said:
"We have held in several cases that threats made by an accused to kill the deceased uncommunicated to the deceased are admissible in evidence. These threats show malice, premeditation or criminal intent. Herron v. State, Miss., 287 So.2d 759, cert. denied 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974); Ladner v. State, 197 So.2d 257 (Miss. 1967); Lambert v. State, 171 Miss. 474, 158 So. 139 (1934); Myers v. State, 167 Miss. 76, 147 So. 308 (1933). We further have held that should the alleged threat be so remote as to be of no evidentiary value it should not be admissible. Myers v. State, supra. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), we held that the trial judge did not abuse his discretion in allowing evidence of a conditional threat made by the accused two months before the killing of the deceased. Whether or not a threat is too remote to be admissible is a question addressed to the sound discretion of the trial judge. We hold that the lower court was completely within its discretion in holding that the alleged threat made in the presence of witness Crystal Smith was admissible." 357 So.2d at 295-296.

*1034 We are of the opinion that the trial court did not abuse its discretion in admitting the threats in evidence.
357 So.2d at 295-296.
In Bennefield v. State, 202 So.2d 48 (Ala. 1966), Bennefield was convicted for murder in the second degree of his wife. The Court held that evidence of threats and assaults on deceased by appellant committed several years prior to the commission of the homicide were not too remote to be considered by the jury. The Court said:
The lapse of time does not render evidence of threats inadmissible. Rector v. State, 11 Ala.App. 333, 66 So. 857 (threat made two years prior to killing); Pulliam v. State, 88 Ala. 1, 6 So. 839; Shelton v. State, 217 Ala. 465, 117 So. 8 (for the last two or three years); Redd v. State, 68 Ala. 492 (two years); Blue v. State, 246 Ala. 73, 19 So.2d 11 (several years prior to the killing).
In Patterson v. State, 243 Ala. 21, 8 So.2d 268, defendant had been convicted of murder in the first degree for the death of his wife. Over objection and for the purpose of showing motive, the State was allowed to prove that more than a year and a half before the death of his wife, defendant had been convicted for assaulting deceased and sentenced to the penitentiary for 422 days. The court held that conviction and incarceration for another and former crime is admissible if it reasonably tends to show a motive for the crime for which the accused is on trial. Other courts have admitted evidence of assault, violence, etc., upon deceased by the accused, even though there had been a considerable lapse of time between these acts and the homicide.
202 So.2d at 51.
See the decisions of other courts in People v. Bolton, 215 Cal. 12, 8 P.2d 116 (1932) [one and one-half years]; Koerner v. State, 98 Ind. 7 (1884) [four years]; Sayres v. Commonwealth, 88 Pa. 291 (1879) [two years].
We distinguish the facts of the case sub judice from those in the usual homicide case where the question of remote threats arise. Here, the appellant was charged with the murder of his wife rather than some other individual. The solicitation of Troxal was more a plan and scheme than a threat. Relevance of that testimony was borne out by the testimony of insurance agents that he inquired about the status of the insurance policies and whether or not they had double indemnity clauses prior to the homicide. The appellant testified that his wife accidentally drowned. We are of the opinion that the lower court did not abuse its discretion in admitting the testimony of the Troxals in holding that the solicitation of Troxal by appellant was not too remote in time.

II.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A DIRECTED VERDICT AND IN DENYING HIS REQUEST FOR A PEREMPTORY INSTRUCTION OF NOT GUILTY.
Under this assignment of error, appellant contends that (1) he should be discharged because the Weathersby rule applies in this case and (2) the evidence was insufficient to support the verdict. The record reflects the following:
(1) Appellant planned to have his wife killed approximately ten (10) months before the homicide (testimony of the Troxals).
(2) Appellant checked on life insurance policies covering Mrs. Hammond issued by two companies and wanted to be assured that the policies were in effect (this inquiry was made on the day before death).
(3) Mrs. Hammond had never put her fishing rod together (appellant said that she had assembled her fishing rod and only lacked baiting her hook before she disappeared).
(4) Appellant testified that Mrs. Hammond was standing on the edge of the creek; that he walked 400 feet upstream and turned around and she had disappeared (appellant was the last person with her and the last person who saw her alive; and only *1035 a matter of seconds elapsed from the time he last saw her until she disappeared).
(5) Mrs. Hammond had not been drinking intoxicating liquor as appellant testified (appellant said he and Mrs. Hammond had drunk several rum and coke before arriving at the fishing spot but were not drunk. Alcohol tests on Mrs. Hammond were negative).
(6) Mrs. Hammond died of several violent blows to the head and she did not drown (testimony of Dr. Spraberry who performed the autopsy).
The rule for considering motions for directed verdicts and requests for peremptory instructions in criminal cases is stated in Warn v. State, 349 So.2d 1055 (Miss. 1977):
Peremptory instructions should be refused if there is enough evidence to support a verdict... .
The law regarding peremptory instructions in Mississippi is stated in Cochran v. State, 278 So.2d 451, 453 (Miss. 1973):
The rule in regard to a peremptory instruction is the same in criminal and civil cases, the rule being that when all the evidence on behalf of the state is taken as true, together with all sound or reasonable inferences that may be drawn therefrom if there is enough to support a verdict of conviction, the peremptory instruction must be denied.
See also Jackson v. State, 440 So.2d 307 (Miss. 1983); Gray v. State, 387 So.2d 101 (Miss. 1980); Rich v. State, 322 So.2d 468 (Miss. 1975); McGee v. Coccaro, 261 So.2d 465 (Miss. 1972); and Carroll v. State, 196 So.2d 878 (Miss. 1967).
We are of the opinion that the Weathersby rule does not apply in this case, that the evidence presented a guilt issue for the jury, and we reject the contention expressed in Assignment II.

III.

THE COURT ERRED IN REFUSING APPELLANT'S JURY INSTRUCTION D-12.
The second part of Instruction D-12 reads as follows:
If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.
Appellant contends that the court should have granted the instruction under authority of Owens v. State, 80 Miss. 499, 32 So. 152 (1902). However, in Fleming v. State, 319 So.2d 223 (Miss. 1975), this Court, citing Butler v. State, 245 So.2d 605 (Miss. 1971), condemned a similar instruction and said:
The court was correct in denying Instruction No. 17. This instruction is another of the "false in part, false in all" [falsus in uno, falsus in omnibus] instructions on the weight to be given to the testimony of a witness. We have condemned this instruction so often that we hope it should be plain to all that the instruction is not proper. Butler v. State, 245 So.2d 605 (Miss. 1971).
319 So.2d at 224. See also Taurasi v. State, 233 Miss. 330, 102 So.2d 120 (1958); Dolan v. State, 195 Miss. 154, 13 So.2d 925 (1943); Swanner v. State, 191 Miss. 47, 2 So.2d 142 (1941); and Metropolitan Life Ins. Co. v. Wright, 190 Miss. 53, 199 So. 289 (1940).
The lower court committed no error in refusing to grant the instruction.

IV.

THE LOWER COURT ERRED IN REFUSING APPELLANT'S REQUESTED JURY INSTRUCTION D-20.
Instruction D-20 was a circumstantial evidence instruction which we consider to be a comment upon the weight of the evidence and repetitious. The lower court granted several instructions on circumstantial evidence, including the two-theory instruction, and the jury was fully and adequately instructed on circumstantial evidence. The lower court committed no error in refusing the instruction. Anderson v. *1036 State, 413 So.2d 725 (Miss. 1982); Ragan v. State, 318 So.2d 879 (Miss. 1975).
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] James Troxal had been in a fight with appellant in the past. On a second occasion, appellant broke up a fight between Troxal and a third party. Hammond owned the bar in which this second fight took place and he barred Troxal from coming there again. Troxal had a previous conviction for forgery and his brother, Doug Troxal, had been previously convicted of burglary. Doug was also under indictment at the time of the trial on a drug charge. When that indictment was returned the Troxals volunteered their information concerning appellant to the district attorney.